# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GREGORY LEE FUGATE, | CASE NO. 4:16-cv-00504-GBC |
| Plaintiff, | |
| v. | (MAGISTRATE JUDGE COHN) |
| NANCY A. BERRYHILL,[1]<br>Acting Commissioner of Social Security, | OPINION AND ORDER TO DENY PLAINTIFF'S APPEAL |
| Defendant. | |

## OPINION AND ORDER TO DENY PLAINTIFF'S APPEAL

This matter is before the undersigned United States Magistrate Judge for decision. Gregory Lee Fugate ("Plaintiff") seeks judicial review of the Commissioner of the Social Security Administration's decision finding of not disabled. As set forth below, the Court **DENIES** Plaintiff's appeal and **AFFIRMS** the Commissioner's decision in this case.

## I. STANDARD OF REVIEW

To receive disability or supplemental security benefits under the Social Security Act ("Act"), a claimant bears the burden to demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); accord 42 U.S.C. § 1382c(a)(3)(A).

The Act further provides that an individual:

> shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his

---

[1] Effective January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d)(1), Commissioner Berryhill is automatically substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Plaintiff must demonstrate the physical or mental impairment "by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988) (setting forth the five steps in detail). "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." Williams, 844 F.2d at 750. The claimant bears the burden of proof at steps one through four. See Wells v. Colvin, 727 F.3d 1061, 1064 at n.1. (10th Cir. 2013). If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. Id.

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. See e.g., 42 U.S.C. § 405(g) ("court shall review only the question of conformity with such regulations and the validity of such regulations"); Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See id. Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988) (quoting Consolidated

Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the [Administrative Law Judge's ("ALJ's")] findings in order to determine if the substantiality test has been met." Id. The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

## II. BACKGROUND

**A.  Procedural History**

Plaintiff worked as a firefighter for twenty-three (23) years and seeks Medicare hospital benefits as a Medicare Qualified Government Employee (MQGE)[2] due to back pain, neuropathy, headaches, depression, anxiety, irritability, anger issues, sleeping disorder, poor concentration, poor memory, and hearing loss. (Tr. 6, 191). Plaintiff filed an application in December 2012, alleging an onset date of May 10, 2010. (Tr. 171). Following an administrative hearing, the ALJ issued a decision dated October 14, 2014, finding Plaintiff not entitled to benefits. (Tr. 19-31). Plaintiff was born in 1965; he was forty-four (44) years old on the date of alleged onset and forty-eight (48) years old at the time of the ALJ's decision. (Tr. 43). The appeals counsel denied Plaintiff's request for review on May 31, 2016. (Tr. 1-4). Therefore, the decision of the ALJ

---

[2] A person is an MQGE when he perfoms any employment as a Federal, state, or local employee and that employment is not subject to full Social Security coverage and taxation. Only quarters of coverage for entitlement to hospital insurance (HI) are earned and the employee and employer pay only the HI portion of the Social Security tax. Social Security Administration Program Operations Manual System (POMS) RS 01505.025; see also POMS RS 01401.010.A. The agency applies the fully insured status test for retirement and survivors insurance (RSI) to determine if a person is eligible for Medicare hospital benefits as an MQGE. POMS RS 00301.160.D.2.

3

became the final decision of the Commissioner of Social Security Administration. Plaintiff timely filed this action.

## III. ISSUES AND ANALYSIS

On appeal, Plaintiff alleges four errors: (1) the ALJ should have found Plaintiff was disabled at Step Two (listed impairment); (2) the ALJ made an improper credibility assessment; (3) the ALJ did not give proper weight to the restrictions given Plaintiff by his treating physician; and (4) the ALJ erred in formulating the Residual Functional Capacity ("RFC") assessment by failing to include all of Plaintiff's limitations. (Pl. Br. at 1-2, Doc. 10).

### A.    Listed Impairment

#### 1.    1.04(A) Disorders of the spine

Plaintiff contends the ALJ erred by finding Plaintiff did not meet the requirements of Listing 1.04(A) Disorders of the spine. (Pl. Br. at 2). Listing § 1.04(A) Disorders of the spine provides a claimant is disabled per se as follows:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) ...

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04(A).[3] In the decision, the ALJ reviewed the record and Plaintiff's testimony prior to evaluating his RFC:

> The claimant is insured for Medicare Benefits only. He does not have insured status for title II monthly benefits …

---

[3] The Court cites the 2014 version of the regulations in effect at the time of the ALJ's decision.

The claimant has the following severe impairments: degenerative disc disease of the spine status post remote history of hardware placement (April 2003) and hardware removal (November 2004) with peripheral neuralgia, right ankle impairment, bilateral hearing loss, depressive disorder, PTSD, and alcoholism in reported remission …

The claimant's testimony is summarized as follows:

He lives in Collinsville in a house with his daughter and his girlfriend. His son is 17 years old and also lives in the house. He has five acres of his father's land and they have about 40 cows on the property. He does not work with the cattle because his father has someone hired for that purpose. He does haul the cattle in a big stock trailer and he uses a red heeler dog to round up the cattle. He occasionally drives his dad's dump trunk and hauls dirt and gravel. They live in the house free as payment for helping his dad. He drives the truck once or twice a week for a few hours. Before his back got bad, he was driving more often. He was a firefighter in Broken Arrow but left due to back injuries. He has filed two workers' compensation cases that he knows of. He is also deaf in the right ear. He fell out of the tub about two months ago, and about a month ago he had a bursa sac on his right knee that burst and he went to the emergency department.

He can lift about 50 pounds but he pays for it later because his back hurts extremely badly and the pain makes him hateful. He has been told that he is depressed but quit taking his medication for depression a few months ago. The medications made his depression worse and he does not like to feel drugged up. He would lock himself in a room about three times a week and would just lie down from the pain. He can walk about 100 yards but has pain in his back that goes down both legs to his feet for most of the day. He can stand about 30 minutes and sit for about an hour. He sits in a recliner with his feet propped up and he does the Jacuzzi baths. He sits in his recliner about four hours a day and watches television in the evenings. He just hangs out around the house during the day. His girlfriend does the grocery shopping and all the chores. He drives the dump truck around Tulsa, which is about 75 miles radius. He last drank alcohol about three weeks before the hearing, and last drank a lot of alcohol about three years ago. He was a firefighter for 23 years. He drops a lot of things and has problems with peripheral neuropathy. He has extreme pain with only [light] touch to his feet. He once lifted a tractor tire that weighed about 100 pounds and it put him into the emergency department. He does not take pain medication every day. He has a diagnosis of PTSD from dealing with multiple calls that involve children and babies especially …

The claimant alleges he is disabled and unable to work due to back pain, neuropathy, headaches, depression, anxiety and PTSD. He has undergone an L5-S1 fusion with orthopedic instrumentation in 2001 and hardware removal in 2005. He has worked as a firefighter for 23 years but had to retire due to his health problems. The claimant helps his father by driving a dump truck and driving a cattle trailer.

A medical report from Hillcrest Medical Center, dated August 19, 2009, shows the claimant's examination was within normal limits. He was in essentially good health and should follow up with his personal physician about somewhat high triglycerides and follow up with an audiologist for the hearing loss in his left ear. The claimant should follow up with his personal physician for positive hemoccult test.

Medical report dated August 5, 2010, from Kenneth Trinidad, D.O. was submitted after evaluation of the claimant and his ability to perform the duties of a firefighter, for workers compensation purposes. The claimant had a mildly antalgic gait favoring the left leg. There was tenderness and spasm from L3 through S1 bilaterally. There was tightness with straight leg raise at 60 degrees. He had tenderness and spasm from L3 through S1 bilaterally. The claimant had decreased sensation in the left leg at L4-L5 and S1 distributions, but the remainder of the exam was noncontributory. Dr. Trinidad further reported the claimant's condition was stable and he had reached maximum medical recovery.

An MRI dated July 5, 2011, shows the claimant had status post midline laminotomy at L5-S1 with a solid anterior interbody fusion and a solid posterolateral fusion with ankyloses of the facet joints; mild annular bulge of the intervertebral discs from L1-2 through L4-5. He had mild central canal stenosis from L2-3 through L4-5 and moderate bilateral L4-5 neural foraminal narrowing.

An EMG/NCV revealed normal study on July 5, 2011. There was evidence of right and left lumbar radiculopathy, mononeuropathy of the right or left tibial nerves and right / left perineal nerves and generalized peripheral involving the lower extremities.

On November 21, 2011, the claimant presented to Bailey Medical Center for complaints of abdominal and chest pain after a fall. X-rays of the chest revealed no rib fractures or pneumothorax identified. CT scan of the chest revealed fractures of the 8th through 10th posterior right ribs with the 8th and 9th slightly distracted. There was mild pleural thickening in the region of the ribs fractures on the right likely due to a small amount of hemorrhage. There were fractures of 3 and 4 transverse processes on the right with a question of L-2. CT scan of the head revealed no acute intracranial abnormality. X-rays of the cervical spine revealed degenerative disc disease at C4-C5, and C5-C6. The C-7 vertebral body was incompletely visualized.

On November 23, 2011, Dr. Trinidad reported the claimant complained of constant pain and spasm in his back, worsened with bending, stooping and lifting. He had difficulty standing over an hour. He had pain and paresthesias into the left leg, numbness and weakness in the left leg. There was tenderness and spasm from L3 through S1 bilaterally. There was tightness with straight leg raise at 60 degrees. He had tenderness and spasm from L3 through S1 bilaterally. The claimant had decreased sensation in the left leg at L4, L5 and S1 distributions, but the remainder of the exam was noncontributory.

> Office visit notes from Kenneth R. Trinidad, D.O., dated January 16, 2013, show the claimant had a mildly antalgic gait favoring the left leg. Musculoskeletal examination revealed scars consistent with his surgical history. He had tenderness and spasm from L5-S1 bilaterally and positive straight leg raising. The claimant had decreased range of motion of the back. Neuro examination revealed deep tendon reflexes were symmetric and downgoing. There was decreased sensation in the left leg in a L4, L5 and S1 distribution and considerable weakness in the left leg in a L4, L5 and S1 distribution. The remainder of the exam was noncontributory. It was the opinion of Dr. Trinidad that claimant would not be able to return to his occupation as a firefighter, as he had sustained severe injuries to his back, which precluded him from performing the essential duties of a firefighter. The condition was permanent as far as the occupation of firefighter.
>
> Records dated March 9, 2014, show the claimant had been climbing up and down a ladder when he experienced severe behind the knee pain. The claimant was examined and a synovial cyst of popliteal space was found. There w[ere] no significant injuries. The right knee had full range of motion with swelling and tenderness to palpation of the popliteal area. He was provided with an injection for pain and released in stable condition with the discharge diagnosis of Baker's Cyst.

(Tr. 21-26). Thus, the ALJ thoroughly reviewed Plaintiff's allegations regarding his physical impairments. From the record, the ALJ found Plaintiff had the RFC to perform:

> a range of light work with no more than occasional lifting up to 20 pounds, no more than frequent lifting or carrying up to 10 pounds; standing / walking 6 hours out of an 8-hour workday; sitting 6 hours out of an 8-hour workday; no climbing ladders, ropes, or scaffolds; no more than occasional climbing stairs / ramps, stooping, kneeling, crouching, or crawling; and no exposure to hazards such as unprotected heights, being around dangerous moving machinery, or operation of motorized vehicles, or loud background noises more than an office setting. The claimant is able to understand, remember, and carry out simple and some complex instructions consistent with semiskilled work and able to relate and interact with coworkers and supervisors on a work-related basis only with no to minimal interaction with the general public. The claimant can adapt to a work situation with these limitations / restrictions and his medications would not preclude him from remaining reasonably alert to perform required functions presented in a work setting.

(Tr. 23). The ALJ formulated the RFC from consideration of all of the evidence. Plaintiff makes the following argument to support a listed impairment for his back:

> The ALJ gave great weight to the opinions of the medical consultants from State Disability Determination Services ("DDS"). (Tr. 29). Review of the medical consultant evaluating Claimant's back indicates the following: positive straight leg raising, decreased range of motion, decreased sensation in the left leg in a L4, L5 and S1 distribution (sensory and denoting a compromise of the nerves) as well as

7

considerable weakness in the left leg in a L4, L5, S1 distribution (muscle weakness). (Tr. 89). Noted throughout the medical evidence is a loss of reflexes in the left foot and right knee with a diminished reflex in the right ankle. (Tr. 305, 307, 290).

(Pl. Br. at 14). The ALJ made the following findings regarding a listed physical impairment:

> The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> The [ALJ] has carefully compared the claimant's signs, symptoms, and laboratory findings with the criteria specified in all of the Listings of Impairments. The [ALJ] finds no evidence that the claimant has an impairment, or combination of impairments, that meets or medically equals any listed impairment.

Although the ALJ did not specifically address Listing 1.04(A), Plaintiff failed to establish a listed impairment because there was no evidence of nerve root compromise or motor loss, which are required criteria of the listing. 20 C.F.R. pt. 404, subpt. P, appx. 1 § 1.04A; see also Sullivan v. Zebley, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severe, does not qualify."); Fischer-Ross v. Barnhart, 431 F.3d 729, 733 (10th Cir. 2005) (at step three, the plaintiff has burden to present evidence showing he met or equaled a listing). Here, objective x-ray and MRI evidence revealed there was no nerve root compromise. (Tr. 281, 284-85, 319-20). The record also does not document evidence of "motor loss"[4] (see generally Tr. 271-498). Thus, Plaintiff's impairment does not meet or equal Listing 1.04A. Moreover, the ALJ's discussion at subsequent steps supports a finding Plaintiff does not meet Listing 1.04A. See Fischer-Ross, 431 F.3d at 735 (applying harmless error to Social Security cases when the ALJ continued with the sequential evaluation process and the record supports the

---

[4] A claimant's ability to get on and off the examination table, inability to walk on the heels or toes, to squat, or to arise from a squatting position may be considered evidence of significant motor loss. 20 C.F.R. pt. 404, subpt. P, appx. 1 § 1.00(E)(1).

ALJ's findings at subsequent steps of the process). When evaluating the medical opinions and Plaintiff's RFC, the ALJ discussed examination findings and functional limitations due to Plaintiff's back pain and activities inconsistent with a per se disabling back impairment, such as driving the dump truck around Tulsa, which is about 75 miles radius. (Tr. 25-26, 27-28). Since the ALJ's RFC and discussion of medical opinions demonstrates Plaintiff's back impairment does not meet Listing 1.04A, any error in not discussing it at step three does not warrant remand.

B.     **Credibility Analysis**

1.     **Plaintiff's Activities**

Plaintiff states the ALJ erred in assessing Plaintiff's credibility. (Pl. Br. at 3-4). The ALJ reviewed the record to evaluate Plaintiff's credibility:

> The claimant has described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. At one point or another in the record, either in forms completed in connection with the application and appeal, medical records or reports, or in the claimant's testimony, the claimant has reported he works on the farm, cares for his own personal needs, prepares meals, helps with the household chores, goes shopping for groceries and is able to drive a car. In fact, the claimant drives a dump truck for his dad and receives rent-free housing as payment. He uses a cattle trailer to haul cattle on the farm. The claimant watches television and uses the computer. He socializes with family members. He reported riding a tractor out in the field in September 2012, and on January 25, 2013 reported that his back pain was interfering with "his job."

(Tr. 27). Thus, the ALJ reviewed Plaintiff's activities prior to making the credibility finding. Plaintiff states the ALJ failed to articulate specific reasons or perform a discussion of the credibility factors under 20 CFR §§ 404.1529; 416.929. (Pl. Br. at 3). However, the code does not require a factor by factor discussion. See Keyes-Zachary v. Astrue, 695 F.3d 1156, 1167 (10th Cir. 2012) ("But so long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, he need not make a formalistic factor-by-factor recitation of the evidence. Again, common sense, not technical perfection, is our guide.")

Although recently the Social Security Administration has eliminated the use of the term "credibility" from the agency's sub-regulatory policy, the agency continues to evaluate a disability claimant's symptoms using a two-step process:

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities for an adult ...

Soc. Sec. Ruling ("SSR") 16-3p; Titles II & XVI: Evaluation of Symptoms in Disability Claims, 2016 WL 1119029 at 2 (Mar. 16, 2016) (superseding SSR 96-7p; Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186 (July 2, 1996)).[5]

> At step one of the process, "[a]n individual's symptoms ... will not be found to affect the ability to perform work-related activities for an adult ... unless medical signs or laboratory findings show a medically determinable impairment is present." Id. at 3. At step two, the ALJ may consider, among other things, a number of factors in assessing a claimant's credibility, including the levels of medication and their effectiveness, the extensiveness of the attempts ... to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ ... and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995); see 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

---

[5] SSR 16-3P was issued after the date of the ALJ's decision in this case. However, the two-step process substantially restates the prior two-step process set forth in SSR 96-7, which was characterized by the Tenth Circuit as a three-step process set forth in Luna v. Bowen, 834 F.2d 161, 163-64 (10th Cir. 1987), the seminal case regarding credibility followed in the Tenth Circuit. See, e.g., Keyes-Zachary, 695 F.3d at 1166-67.

In this case, the ALJ included in his decision Plaintiff's treating physician, Dr. Patton, noted Plaintiff does not use a cane to ambulate, could frequently use his hands bilaterally for reaching overhead, reaching all other directions, handling, fingering, feeling and pushing/pulling; and Plaintiff could continuously use his feet for operation of foot controls. (Tr. 26). On September 32, 2012, Plaintiff reported increased back pain after having an accident in the field on the tractor. He had been out of his medication for two weeks. He returned on January 25, 2013 and reported hating the holidays because he did not feel comfortable in unknown situations with people he did not know. His back pain was interfering with his "job …" (Tr. 27). These statements in the decision as well as the ALJ's discussion as to Plaintiff's credibility support the ALJ's findings.

2. **ALJ Weight to State Agency Opinions**

Plaintiff states the ALJ gave great weight to the non-examining state agency physicians, and those physicians found Plaintiff's allegations credible. (Pl. Br. at 3). Although the state agency physicians found medical evidence supports Plaintiff's complaints, they concluded he could perform light work with limitations. (Tr. 87-92; 102-06). The ALJ made the following conclusions regarding the medical evidence in the record:

> After careful consideration of the objective evidence of record, the testimony at the hearing and the claimant's activities of daily living, the [ALJ] gives great weight to the opinions of the consultative examiners and medical consultants of the DDS and conclude[s] that the medical evidence and opinions are consistent with the RFC noted above. Further, the state agency physicians, who are experts in assessing the physical and mental limitations that reasonably flow from a medical condition, have concluded the claimant can reasonably be expected to perform at the light exertional level with the non-exertional limitations outlined above.
>
> The [ALJ] does not discount all of the claimant's complaints; however, the evidence demonstrates that even though the claimant does have medically determinable impairments, none are severe enough to prevent the claimant from participating in substantial gainful activity, given the RFC set forth above. Given the objective medical evidence in the record, the [ALJ] finds that the claimant's RFC is reasonable, and that the claimant could function within those limitations without experiencing significant exacerbation of his symptoms.

11

(Tr. 29). Thus, the ALJ gave great weight to the state agency physicians who also found Plaintiff could perform light work with limitations. The ALJ found Plaintiff's allegations not fully consistent with the record. The ALJ supported the credibility determination with substantial evidence of the record demonstrating inconsistencies between Plaintiff's allegations and findings from other doctors and Plaintiff's report of activities. Therefore, the ALJ appropriately considered and weighed the medical opinion evidence, in addition to finding Plaintiff's allegations of disabling limitations not credible, and the findings were supported by substantial evidence. The Court is not to disturb an ALJ's credibility findings if they are supported by substantial evidence because "[c]redibility determinations are peculiarly the province of the finder of fact." Cowan v. Astrue, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting Kepler, 68 F.3d at 391). Plaintiff fails to demonstrate how the alleged error would have changed the outcome of the case. See Vititoe v. Colvin, 549 F. App'x 723, 729-30 (10th Cir. 2013) (citing Shinseki v. Sanders, 556 U.S. 396, 409-10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."). Based on the foregoing, substantial evidence supports the ALJ's credibility determination. See SSR 96-7p; 20 C.F.R. §§ 404.1529, 416.929.

**C.    ALJ's Evaluation of the Treating Doctor**

    **1.    Dr. Patton**

Plaintiff contends the ALJ failed to properly apply the treating physician rule and gave "little weight" to Dr. Patton's restrictions regarding Plaintiff's ability to sit, stand, and walk. (Pl. Br. at 5-7). In the decision, the ALJ reviewed the record when evaluating the treating doctor:

> Records from J.D. Patton, D.O., show the claimant presented on August 2, 2013 for a DOT physical and medication refills. His height was 5'9" tall with a weight of 212 pounds. Blood pressure was 140/86. He was prescribed Neurontin 600 mg and diagnosis was physical. On October 17, 2013, the claimant reported lower back pain and had not slept in two nights. He was out of Lortab and needed refills. He reported lifting a heavy brake drum. The claimant reported not taking

> much of the clonazepam … The diagnosis was lumbar strain and he received a prescription for Lortab 7.5mg for use as needed. On November 22, 2013, the claimant returned for medication refill and prescribed Lortab 7.5mg as needed. On March 7, 2014, the claimant requested medication refills and reported his back was hurting and requested Flexeril. Examination showed lumbar pain. Medications included Norco 7.5mg as needed, Neurontin 600mg, Benadryl as needed, and Clonazepam .5mg, one-half tablet twice a day as needed. The claimant presented for follow up of his Baker's Cyst on March 10, 2014.
>
> The claimant's primary care physician provided a Medical Source Statement on April 21, 2014 that shows he could lift up to 50 pounds occasionally … but was limited from heavier weight due to lumbar pain. The claimant was limited to sit and/or stand for one hour at a time and not more than 2 hours total in an 8-hour workday. He could walk for 30 minutes at a time and up to 1 hour in an 8-hour workday due to back pain. He would need to sit, stand, and frequently get up and down to alleviate the pain. He does not use a cane to ambulate. He could frequently use his hands bilaterally for reaching overhead, reaching all other directions, handling, fingering, feeling and pushing/pulling. The claimant could continuously use his feet for operation of foot controls. The claimant could occasionally climb stairs, ramps, ladders or scaffolds and balance, but should avoid all stooping, kneeling, crouching and crawling due to lumbar pain. He had no visual impairments. The claimant was to avoid all unprotected heights, dust, odors, fumes and pulmonary irritants, and could have occasional contact with moving mechanical parts, operating a motor vehicle, extreme cold, and vibrations. He could frequently have exposure to humidity and wetness and extreme heat. The claimant could tolerate moderate (office) noise. Dr. Patton reported any work or activities that affected his lumbar spine caused pain and limitations and the limitations have been present since approximately April 2013, and would last for more than 12 consecutive months …
>
> The [ALJ] gives little weight to the claimant's treating physician regarding the limited amount of sitting, standing, and walking. The record shows a solid fusion with only mild disc bulge. (Exhibit 3F, page 1) [citing to report by orthopedic David R. Hicks, M.D]. Dr. Patton has clearly exaggerated the claimant's limitations with walking and sitting, perhaps out of sympathy for his patient, but nonetheless, the claimant reports that he drives a dump truck, hauls cattle, and works on the farm, which would involve more exertion than Dr. Patton has reported. (Exhibits 14F, 15F, 3F, 4E, and testimony) [citing to reports by Dr. Patton, Dr. Hicks, and Plaintiff].

(Tr. 26, 28). Thus, the ALJ put forth a detailed analysis regarding Plaintiff's treating physician, Dr. Patton. Plaintiff contends the reports by Dr. Hicks, Dr. Benner (the neurosurgeon), and Dr. Trinidad support Dr. Patton's sitting, standing, and walking restrictions. (Pl. Br. at 5-6). However, the ALJ specifically considered the findings of Drs. Hicks and Trinidad in the decision. (See Tr.

13

28) ("record shows a solid fusion with only mild disc bulge") (citing to report by Dr. Hicks); (see also Tr. 25) ("[o]ffice visit notes from Kenneth R. Trinidad, D.O., dated January 16, 2013, show the … claimant had decreased range of motion of the back. Neuro examination revealed deep tendon reflexes were symmetric and downgoing. There was decreased sensation in the left leg in a L4, L5 and S1 distribution and considerable weakness in the left leg in a L4, L5 and S1 distribution. The remainder of the exam was noncontributory.) As for the findings by the neurosurgeon, Benjamin G. Benner, M.D., although the ALJ did not cite to the report within the decision, nothing in the report contradicts the RFC. Plaintiff notes in the reports dated December 2, 2008 and April 21, 2009, Dr. Benner found right S1 radiculopathy, absent reflexes in the right knee and left ankle and diminished right ankle reflex. (Pl. Br. at 6) (citing Tr. 305, 307). However, on May 19, 2009, Dr. Benner saw Plaintiff for a follow-up. (Tr. 303). Dr. Benner noted Plaintiff has back pain in the middle lumbar area with some left leg radiation. Id. He has not had any work loss and has no restrictions. Id. He is taking Lyrica and Lortab from his primary care physician. Id. His MRI scan demonstrates post-op changes at L5-S1. Id. He does not have any significant compromise of his canal or of the nerve roots. Id. He essentially has a normal L4-5 level with some L2-3 and L3-4 degenerative changes. Id. Dr. Benner concluded his report by stating, "he remains totally employable without restrictions." (Tr. 304).

An ALJ may give greater weight to the opinion of a State agency medical consultant over other opinions when the consultant's opinion is better-supported by the record than the opinion of the treating physician. See 20 C.F.R. § 404.1527(e)(2)(ii) (ALJ should evaluate a state agency medical consultant's opinion using the factors set forth in 20 C.F.R. § 404.1527(a)-(d)), 404.1527(c)(4) (ALJ must consider whether an opinion is consistent with the record as a whole). The ALJ gave great weight to the opinions of the consultative examiners and medical consultants

of the State Disability Determination Services ("DDS") who found Plaintiff could perform at the light exertional level with the non-exertional limitations outlined above. (Tr. 29). As for Plaintiff's testimony, the ALJ noted he did "not discount all of the claimant's complaints; however, the evidence demonstrates that even though the claimant does have medically determinable impairments, none are severe enough to prevent the claimant from participating in substantial gainful activity, given the RFC set forth above." Id. Moreover, in 2013, the agency physicians reviewed Plaintiff's medical record and found he could perform light work with limitations. Thus, the ALJ gave great weight to the findings of the state agency physicians. The ALJ reasonably found Dr. Patton's opinion was not entitled to controlling or great weight. See 20 C.F.R. § 404.1527(c)(3) (opinions receive weight based on their supportability); see also Branum v. Barnhart, 385 F.3d 1268, 1275-76 (10th Cir. 2004) (ALJ may consider the degree to which the physician's opinion is supported by relevant evidence); Vigil v. Colvin, 805 F.3d 1199, 1202 (10th Cir. 2015) ("The ALJ's finding [the physician's] restrictions on standing and walking were inconsistent with his own examination findings is a good reason for giving that medical opinion only moderate weight.").

Therefore, the ALJ reasonably declined to give weight to this opinion, which the ALJ found inconsistent with the overall record. (See 20 C.F.R. § 404.1527(c)(4) (stating an ALJ must consider whether an opinion is consistent with the record as a whole); see also Raymond v. Astrue, 621 F.3d 1269, 1272 (10th Cir. 2009) (ALJ reasonably discounted treating physician opinion which was inconsistent with other medical evidence). Moreover, the ALJ could reasonably rely on the opinion of the state agency physicians. See 20 C.F.R. § 416.927(e)(2)(i) (state agency medical consultants "are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation"); Flaherty v. Astrue, 515 F.3d 1067, 1071

(10th Cir. 2008) (a non-examining physician is an acceptable medical source, whose opinion the ALJ is entitled to consider).

**D.     ALJ's RFC Findings**

Plaintiff states the ALJ erred by failing to properly formulate Plaintiff's RFC and include all of his limitations, including the ability to sit, stand, and walk. (Pl. Br. at 7). The Court addressed this argument by Plaintiff as discussed, supra. Plaintiff also contends the mental limitations in the RFC did not conform to the medical evidence. (Pl. Br. at 7-8). The ALJ made the following observations in the decision:

> Regarding the mental aspects of this claim, the claimant was treated by Peterlyne Miller, M.D., for complaints of depression, anxiety and PTSD due to his general medical condition and traumatic events as a firefighter. The diagnoses included were major depressive disorder, recurrent, severe without psychotic features, alcohol dependence, and rule out PTSD. The claimant presented as adequately groomed, cooperative and had a constricted affect with irritability. He had minimal socialization with increased isolation due to the pain. The claimant displayed a depressed mood, constricted affect, and memory was intact. The claimant had average intellect and fair insight into problems and judgment was noted. The claimant displayed a good attention span and had no signs of mania or psychosis noted. The claimant reported he had good reasoning skills and denied any suicidal or homicidal ideations. The claimant was overwhelmed with [] crowds. His chronic pain interferes with his daily activities and significantly affects his mood []. The claimant reported in engaging in mostly isolated activities and worked on his farm. He spends his free time with his girlfriend and his son. On January 25, 2013, the claimant reported his back pain interferes with his job and he will not ask anyone for help when he needs it. He reported having peripheral neuropathy and his walking hurt sometimes. A mental status form was completed by Dr. Miller, which showed the claimant was adequately groomed and cooperative but had a restrictive affect and was irritable. The mental status showed he had depressed mood, constricted affect, intact memory, average intellect, fair insight and judgment, and there were no signs of psychosis. He was oriented in all spheres and social situations, but crowds overwhelmed him. He had chronic back pain that interfered with his daily activities and affected his mood significant[ly]. He had a guarded prognosis and fair improvement was expected. He could remember, comprehend and carry out simple and complex instructions on an independent basis. With regard to work pressures, it was unsure if the claimant could respond to work pressure due to significant mood problems. The diagnosis included major depressive disorder, recurrent, severe without psychotic features, PTSD, alcoholism and alcohol dependence in full remission. His medications included Cymbalta and Prazosin on April 7, 2012. On May 5, 2012, the claimant reported

that he had not had any Lortab in one month. His depression had improved and he reported that he had increased activities, was easier to be around now and he tolerated his medications well with no side effects. His medications included Celexa and prazosin. On September 32, 2012, the claimant reported increased back pain after having an accident in the field on the tractor. He had been out of his medication for two weeks. He returned on January 25, 2013 and reported hating the holidays because he did not feel comfortable in unknown situations with people he did not know. His back pain was interfering with his job and he would not ask for help when he needed it …

Dr. Miller reported the claimant had major depressive disorder, severe without psychotic features, PTSD and alcohol dependence in full remission. While the claimant does have some limitations due to his mental impairments, it has not stopped him from working for his father on an occasional basis, and his limitations of activities of daily living have been attributed to his back pain. Dr. Miller's assessments have been taken into consideration and are consistent with the DDS RFC.

(Tr. 26-27, 29). Thus, in the decision, the ALJ thoroughly reviewed the record and medical opinions to identify Plaintiff's severe impairments of degenerative disc disease of the spine status post remote history of hardware placement (April 2003) and hardware removal (November 2004) with peripheral neuralgia, right ankle impairment, bilateral hearing loss, depressive disorder, PTSD, and alcoholism in reported remission. (Tr. 21). The ALJ then limited Plaintiff's RFC to light work with limitations in lifting, carrying, standing, walking, sitting; no or occasional climbing stooping, kneeling, crouching, or crawling; no unprotected heights, dangerous moving machinery, operation of motorized vehicles, or loud noises; as well as simple and some complex instructions; work-related basis only with coworkers and supervisors; and no to minimal public interaction. (Tr. 23).

Plaintiff states the state agency physicians found Plaintiff had limitations in concentration and persistence; understanding and memory; social interaction; detailed instructions; attendance, punctuality, and adherence to schedule; and ability to complete a workday without unreasonable number of rest periods. (Pl. Br. at 8) (citing Tr. 89-90, 104-06). Although the state agency physicians noted the above limitations, both opinions concluded Plaintiff could adjust to other

work. (See Tr. 91, 105). Moreover, the ALJ accounted for Plaintiff's impairments by limiting the RFC to simple and some complex instructions; work-related basis only with coworkers and supervisors; and no to minimal public interaction. (Tr. 23). The ALJ further found in Plaintiff's RFC he can adapt to a work situation with these limitations / restrictions and his medications would not preclude him from remaining reasonably alert to perform required functions presented in a work setting. Id. Thus, the ALJ relied on the state agency physicians, who found Plaintiff could perform light work with limitations, and the ALJ included these limitations within the RFC. (Tr. 23).

Plaintiff contends the state agency physician found he was "moderately limited" in the ability to complete a workday without unreasonable number of rest periods, and according to the vocational expert ("VE"), absences of more than two days per month would eliminate all competitive work. (Pl. Br. at 8-9). Recently in 2017, the District Court in Colorado considered a similar argument and found:

> Simply because a claimant suffers from moderate limitations "does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment." Vigil, 805 F.3d at 1203. The RFC is an assessment, based on all the relevant evidence, of a claimant's ability to do past relevant work at step four of the sequential evaluation process and to do other work at step five on a sustained basis in an ordinary work setting despite her impairments. 20 C.F.R. § 404.1545(a); SSR 96–8p, 1996 WL 374184 at *2 (July 2, 1996). It is the most that a claimant is able to do despite her physical and mental limitations, and is considered by the ALJ, along with the claimant's age, education and work experience, in determining whether the claimant can work. 20 C.F.R. §§ 404.1520(a)(4), 404.1545(a). In determining the RFC, the ALJ must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe. 20 C.F.R. § 404.1523; SSR 96–8p, 1996 WL 374184 at *5.

Hawkes v. Berryhill, No. 16-CV-01362-MSK, 2017 WL 5036160, at *4 (D. Colo. Nov. 3, 2017). Thus, Plaintiff's moderate limitations did not preclude all work, as found by the state agency physicians and the ALJ.

Therefore, the record provided substantial evidence to support the ALJ's decision. It is not the reviewing court's position to reweigh the evidence or substitute judgment. As the Tenth Circuit has explained:

> "In reviewing the ALJ's decision, we neither reweigh the evidence nor substitute our judgment for that of the agency." Branum v. Barnhart, 385 F.3d 1268, 1270 (10th Cir. 2004). Rather, we examine the record as a whole to ascertain whether the ALJ's decision to grant benefits for a closed period, and to deny benefits thereafter, is supported by substantial evidence and adheres to the correct legal standards. See Shepherd v. Apfel, 184 F.3d 1196, 1199 (10th Cir. 1999). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). It is "more than a scintilla, but less than a preponderance." Id.

Newbold v. Colvin, 718 F.3d 1257, 1262 (10th Cir. 2013). Accordingly, the decision provides substantial evidence a reasonable mind might accept as adequate to support the ALJ's conclusion Plaintiff could perform a significant number of jobs in the national economy.

## CONCLUSION

For the reasons set forth above, the Court **DENIES** Plaintiff's appeal and **AFFIRMS** the Commissioner's decision in this case.

SO ORDERED on March 30, 2018.

**Gerald B. Cohn**
**United States Magistrate Judge**